Case number 22-1320, et al. Absolute Healthcare, the Wayne Business Assecurity Arizona petitioner versus National Labor Relations Board. Mr. Dilger for the petitioner, Ms. Cheehy for the respondent. Good afternoon, your honors. May it please the court. Jeffrey Dilger on behalf of Absolute Healthcare. This is a disparate treatment case in which there was no disparate treatment. The evidence in this case shows that the employer had a discipline process and that it followed that discipline process. And the evidence shows that it followed it for the alleged discriminatee in this case, Ms. Keene. And also for the comparator, Mr. Hubbard. In particular, Ms. Keene was subject prior to her termination in which the board does not contest these levels were validly issued, three levels of progressive discipline for 11 violations of company policy. That included a final written warning, which by her own admission, you can find it at joint appendix 33. She admitted that the company told her another violation of policy would result in the termination of her employment. Can I ask you a threshold question before we go too deep into what was briefed? My question for the board is going to be whether the NLRA protects a company, protects employees at a company, if the company's core enterprise is illegal under federal law. So the question before that is, is your company's enterprise legal or illegal under federal law? I know what the board will say. We are not contesting that there's jurisdiction under the National Labor Relations Act. My question is like a step before that. Is most of what you're selling illegal under federal law? Under the Controlled Substances Act. Okay, then I'll ask her about the jurisdictional matters. Of course, the Supreme Court has said the National Labor Relations Act provisions can apply to workers who are in the United States without documentation, right? Hey, Ken. Can I ask a separate question? And that is, you challenged the notice reading remedy here? Yes. But the general counsel obtained an injunction early on, which was what reinstated Ms. Keene, but also included an obligation for a reading of the order, gathering a meeting, gather meeting, read the order. So Ms. Cade was there, she signed the compliance order with the district court. So the notice reading requirement has already been fulfilled? I would argue that it has, but the notice that has to be read will be slightly different than the court's order in the underlying 10-J injunction. So I don't believe that it's been. If your position has already been complied with, then that would render that challenge. We'll see if the board says, yeah, you were supposed to read it twice or something or. I would argue that the purpose of the notice reading has been fulfilled in that any alleged violation. I mean, it sounds like maybe you read the court's order, but the court's order was enforcing the board's order and it had all the same statements that were supposed to be read. Was there any material difference between what was read at that meeting and what the board's decision requires to be read? Other than the reinstatement being interim versus fixed. I'm not aware. I had to say at that time. But I also will admit that I have not compared the two recently. Okay. It seems like there's a substantial question of mootness as to your notice reading plan. Agreed. I assume you're not saying that you have to do it twice. I don't think that we should be required to do it twice. Nothing in the board order requires you to do it twice. And if the general counsel that thought this initial reading requirement would be a little rich of them to turn around and say, no, no, no, no, you still have to do this other one. I would agree. And I also believe that, like I said, the reading of the notice remedies any of the violations that would be to do it again would make little sense. But I think- Has there ever been a union election in the meantime? A lot of time has elapsed here. No. Is Ms. Keene still employed there? Ms. Keene is employed on an interim basis pursuant to this proceeding. And again, what I wanted to just make very clear with regards to her treatment in this case is that she was given a final written warning. She received three levels of progressive discipline before her ultimate infraction. But at the final written warning level, she was told if you have another violation, it will result in the termination of your employment. And lo and behold, that's what happened. In late August and ultimately on August 28th, when the discharge was affected, she admitted that she had a $20 drawer shortage, that she had violated company policy. And so her termination was for precisely the reason that was proffered in the final written warning, another violation of company policy. And so it was valid. And you can compare- And it's your position, but it's not what the board found here. And you're really, they found, you're talking about what was the motive. I understand your arguments. You've laid them out well in your brief. But they found that in fact, the motivation was her union activities. And you have, and so animus is, the existence of that is a factual question, correct? So- It's a factual question? Well, the disparate, it is a factual question, but- Just the animus question. What motive, when I say animus, that's my shorthand for what motivated the discharge? Yes. And so we have a factual question. And given our senior review, it's not good enough for you to show it was more likely than not that you were going to discharge her, right? This isn't like a civil suit. We would essentially have to find that the board could not rationally, that it committed clear error in finding that the motivation was different than what you argue. And so that's not to dismiss the arguments you make. And the record is just, we're in a different world here where you're showing is, you've got a very steep hill to climb. So tell me how, given that Ms. Cade expressly disparaged her and her motivations in front of her coworkers, said to them, she's just in this for a paycheck, which is a way of saying she doesn't care about any of you co-employees, coworkers. Extraordinarily inappropriate comment and harmful and hurtful comment that suggests some real desire to hurt Ms. Keene on top of the timing and the fact that there were other unfair labor violations all happening at this exact same time. Given that record, we're given two stories here, both of which seem tenable. How, as a court, are we supposed to say that given that record, for me particularly that disparagement on top of everything else, that it was irrational. No rational person could come to the conclusion the board did. So what I would just say is that the disparate treatment evidence actually weighs on both sides of the ledger here. There is both the prima facie case where the board is relying upon disparate treatment evidence to show animus. But then there is also the employer's rebuttal case where it is demonstrating that it would have done the same thing regardless of the prima facie case. And I think that that's where I would like to focus, which is that, and in particular when you look at Mr. Hubbard, the comparator. So you've done enough. So we could say you did enough to show that you had an argument on that side about your reasons for discharging her. Maybe a good argument. Maybe it even seems more likely than not. We can't decide the case on that basis. We have to say that you're showing essentially shut out, shut out any rational basis for concluding otherwise. And that's where I'm struggling. I hope you're gonna help me. Given what evidence they had, and I think in particular, direct targeted, a hostile disparagement of somebody in front of their coworkers, not just disparaging her, but in a way that says she cares only about herself and none of you. That's a really horrible thing to say about somebody. And so with that evidence, how can we say it was irrational to say that we think the scales tipped towards animus? Because they're separate burdens. Because that, you're talking about disparate treatment as it pertains to the animus. I'm talking about your job here, which is to overcomplicate for its ultimate conclusion. However the steps it went through, it made us showing you responded. The board didn't say your response is invalid. We're not gonna consider it. It said, thank you for your evidence. We are weighing the evidence on this record and we've come to this factual conclusion. It's not that you didn't present your case of you would have done it anyhow. They had to make a factual judgment here weighing the record when there's a really powerful piece of evidence that seems to have animus written all over it. The comment does not bear upon whether there was disparate treatment though. Because the disparate treatment, the evidence that the board relies upon is the treatment of Mr. Hubbard. And when you look at the facts, facts to facts, Mr. Hubbard also went through the discipline process. He also received a final written warning. And in that final written warning was told, if you have another violation, you will be terminated. And then he had a violation. He had the exact violation. I understand you're sorry, but the board looks at and goes, he had seven cash drawer violations and she had two cash drawer violations. This raises the next- I'm not counting the other things, but they're saying, look, the cash drawer stuff, at least as to the cash drawer stuff, you're much more flexible in your policy. There's no basis for making that statement in the sense that this is a progressive discipline case. You can't simply say, we're just gonna look at cash handling and ignore the other 10 violations. He was- I'm sorry, through the stages of violation here, because I think there was confusion whether he even ever had a first violation. Correct. That your company let him pile up three or four of them before he even did the first- They skipped the verbal warning is what the evidence, they moved to written. That actually would be more lenient towards Ms. Keene, not more lenient towards Mr. Hubbard as the board. Member Ring, I think analyzes it correctly in a progressive discipline case when there's no basis and there's no explanation by the board. And this is the problem. This is a progressive discipline case. And yet the board ignores the totality of the progressive discipline. Hawaiian dredging holds that the board has to engage with the central factual issue, which is the entire circumstance in what she was- I get you disagree with it. It definitely engaged with it. It said, that's not how your progressive discipline, as we look at the record, that's not how your progressive discipline program works. You have a lot of flexibility and we see some flexibility in what you did with Mr. Hubbard. And so we have to ask, why didn't you do flexibility here? And that's when they bring in the animus problem. And I understand your arguments that we're not deciding this is- Well, again, I think that that mixes the burden though, which is that disparate treatment is separate from animus. It is a separate, they're using it both on the prima facie case side, but also on the backend to try to rebut the employer's rebuttal case. And what we've shown, and again, I understand what you're saying, but what we've shown is that Mr. Hubbard was told, if you do it again, you're terminated. He did it again, he was terminated. And the same thing applied for Ms. Keene. So I would submit that the board's analysis with regards to the discharge is faulty for three reasons. One, it's not supported by substantial evidence. Two, in accordance with Hawaiian dredging, they failed to assess the totality of the critical point where we were saying, you can't separate cash handling violations and just say, oh, that's all that she did. Because that's not why she was disciplined. It's not why she was discharged. She was discharged because she had 11 previous policy violations and three levels of discipline for that, which is more than the leeway that Mr. Hubbard was provided. And then upon violating her final written warning in the commitment to do not violate policy again, she did it. I don't know what an employer is supposed to do in this situation when it says, if you do it again, we're going to terminate you. And the board has no qualms with that. They say that was a lawfully issued discipline and then she does it. And now suddenly we violate the act. In the litany of violations with regards to Mr. Hubbard, I asked this question, is a cash drawer discrepancy the same thing as a cash incident? Yes. So when I see March 5th cash incident, March 8th, $10 cash drawer discrepancy, that appears to be the same. As I understand it, yes. Later on, $10 drawer discrepancy, March 29th cash incident, March 30th. Same one set. As I understand it. There are three such double counts, it seems to me. Sometimes on our standard of review, we talk about running directly counter to the evidence and sometimes many, many times we talk about viewing for substantial evidence. Do you have a sense of which of those we apply here? I think that the standard is substantial evidence. The board's order has to be supported by substantial evidence. Thank you very much. We'll give you a couple of minutes for rebuttal. All right. And on rebuttal, I'd like to talk about union access issues. Well, actually then why don't you, we'll give you a minute now on that so that they get a chance to respond. Yeah, I would just like to say, so on both the notice reading and the access, the standard is severe pervasive and outrageous. That's what the UOP has to be. We don't have that here. Even by the board's own admission in the board's order, it declares that these are severe violations. So there's that problem. In addition to that, the big question that I have is, how is the union access issue? And in particular, the board's reasoning for it, that the company or that the union must be allowed to respond to future misinformation by the company. How is it not solved by the resolution of the 83 question? Either Ms. Keene goes back to work and she's already been at work. She's been able to counter anything that the company would say, or of course that doesn't stand. And if the 83 doesn't stand, then there's no basis for the union access remedy. When you say that you had a list of adjectives about how the type of showing this needed for union access, were those cases where access was accorded as a remedy for unfair labor practices, or whether it was sort of upfront access requirements? Those are all access cases. I'm sorry, were any of them remedial cases? They were all remedial union access cases. Found an unfair labor violation. Correct. And it's not surprising that almost all of those cases were in fact Gissel bargaining order cases. And we're not even close to Gissel bargaining order territory in this case. Thank you very much. Good morning, your honors. May it please the court. I don't know, it might be afternoon time now, I'm not sure. Barbara Sheehy for the National Labor Relations Board. I'm going to start with Judge Walker's question about the, do you want me to ask it or do you want me to try to, I mean, is there a specific, other than what you asked of my- I guess, I understand that plenty of lawful enterprises that do illegal things, sometimes very, very often, do illegal things. Very illegal things. The NLRA still applies to them. And as Judge Millett pointed out, it still applies to companies whose employees have been hired illegally. But here we have, I think, criminal enterprise from top to bottom. Their raison d'etre is in complete violation of federal law. And it seems odd, maybe there's direct precedents that say this, but it seems odd if this enterprise was called like, Hitman Inc. If we would, if the board would issue an injunction that says like, you have to rehire this hitman. That would be a quite odd injunction for the federal government to order. So, I'm not sure I'm going to be able to give you a very satisfactory answer, partly because it hasn't been raised. The party's stipulated to it, so nobody talked about it. The board didn't speak to it. And I certainly don't want to speak on behalf of the board for what, as far as my understanding would go, it would be one of the first times they've spoken on a completely, as you said, illegal enterprise. But I would say the, it's possible, and I don't know, I'm not sure this is in the record, it's possible that it's not, depending on how it's structured, that it's not actually an illegal enterprise. I don't, so for instance, bear with me for one second. I think, I know, yeah, but I think in DC, for instance, they get around, I'm not sure it's been tested, but I think they get around some of the question about whether they're actually selling the product, selling marijuana, or whether you come in and you buy some sort of, I think it's like a T-shirt or something like that, and then as a gift, you get marijuana. So I do, and I have no idea if that's how this dispensary is set up. That can't be any more legal. I don't think, and I don't think that's been tested. I've just- Heroin as a gift? I'm just suggesting it's that people, that companies have tried to structure it. The board has not spoken on this. And so I think this is just sort of begging the question that if this is a threshold matter of, well, first of all, we'd say it was TenEed, right? That it hasn't been raised by them, but if the court is inclined to say- That they could raise and haven't raised. Right, right. I'm sorry, yeah, yeah, yeah. If the court is saying, you know, this is an ultra virus action outside the statute, whether they've raised it or not, I would say, please don't rely on anything that I'm saying on behalf of the board. Please send it back to the board for, in the first instance, for them to say something about whether they, so, like I said, starting off in a relatively unsatisfactory way, I'm gonna move to Judge Millett's question about the mootness. Thank you for being able to keep track of all this. Just saying, you know, it's been a long time since I was back here, so I was sort of excited. So as to the mootness, again, I'd start with, it wasn't raised by the employer, the substantial mootness. The mootness is jurisdiction. I'm sorry, right, but it hasn't been raised by them. So again, we didn't see briefing on it. We didn't see anything like this. I did look at the district court injunction, and I think opposing counsel, I think is absolutely accurate. It is very, very close. I do think there is the question about the reinstatement part about whether it's an interim reinstatement. And to the extent that there's any concern about it really truly is duplicative and moot, I think once the two, so I think the court could enforce. I think the court could enforce the notice reading remedy. And then if there was a question on the part of the employer saying, listen, this is too close. We've already done this. We've already complied. Hang on, this notice reading was before the board ruled, correct? Yes, that's the purpose of the 10J. Were they aware that this had happened? I mean, it was a general counsel meeting. They would have to be, certainly. They have to be aware. Well, I mean, I assume they're aware because the board is the one that authorized the general counsel to go for the 10J. So why would the problem be here if, why would the board nowhere addressed this? It issued a notice reading order when a notice reading had already happened. And, you know, whatever one says about, you know, the extort, whether notice readings are supposed to be extorting, how extorting, how many actors you want to use, the board doesn't get to impose two. No, but the board, let's be clear. The board did impose the first one. That was the district court. I mean, at the general counsel's request. Authorized by the board? The litigation is authorized by the board. Certainly, yes. The board authorizes the general counsel, but it's the court. It's the court, it's the district court that ordered that, not the board. So the- The board should have grappled with that. I mean, I don't understand how the board can sort of have its cake and eat it too and authorize a general counsel to go get an injunction. We can't wait for our decision to come out as the board. Go have her do this reading now or stand there while someone else does the reading. And you're gonna say, but we're gonna leave a comma out. That's in our work. A pause, a word, an adjective might change. Of course, it's interim. The case, it has to be interim. We know what we're doing when we authorize these things. It has to be interim because they're still seeking a decision from the board. And then we're gonna impose another notice reading thing without saying boo about the fact that we already got, if not 100%, 99.9% of what we asked for. I don't understand why it's not an obligation on the board fully aware of who addressed it. Why isn't that an independent, obvious public record on its face problem with the board decision here? Right, and I completely understand the aggravation with what the board did, but I think taking a step back, I don't think it's fair to, so when I say I assume the board knows, that's because they authorized the injunction, but I don't know, for instance, if the board is following the actual general counsel's litigation. I mean, absolutely, it is- The general counsel doesn't have any obligation to update the- I honestly don't know about who, I don't know, I'm not sure. We would have to send it back to the board. Is there any precedent for them doing it a second time? So what I wanted to say that I didn't finish was that I'm not sure that it's fair. I honestly believe it was probably just an oversight on the part of the board that nobody raised it, the employer didn't say, wait a minute, we've already done this, not to say that that's their fault, but as far as flagging it for them, and I- They haven't raised it. Right, no, no, and so the board, either through oversight or whatever, but I don't think there was a nefarious purpose where they decided, listen, we're going to ask for it, and then we're going to ask, then we're going to order it there, that I truly think it was- Remand, but you said remand. No, no, no, what I was going to say is I think what could happen is I think the court could enforce, because to the extent that they- But we're enforcing the second notice reading, we know, and we know a notice reading has already occurred, and there's no dispute about it, and so what you're asking us to do is issue an order that would enforce notice reading number two. Right, but if there's a problem with this, so if the two notices are even slightly different, if the two notices are slightly different, if the employer wants to say, we've already done this, they can argue that in compliance, it doesn't have to be a remand, they could go to compliance and say, we're not going to read the notice. The question is, who had the burden here? But you're asking us to say, there can be two notices, you can have to read it twice, you can have to read version A when it's interim, and then we're going to make you read version two, B, when it's no longer interim, and that's the only word that's going to change. There's nothing in this record that would give us any basis for concluding that that is appropriate, supported by the record, or even desired by the board, so it seems weird to me for us to go, oh, let's just go ahead and force it and make the employer come back and oppose it. Right, and I guess I would say, I don't know exactly what the notice looks like, so I'm just really reluctant to say, just go ahead and don't enforce, it was good enough. We have the text, we have the text. If they were reading the district court's order, which seems insane to me, but that's what the general counsel seemingly asked for, it has all the, we can't do, we can't do, we can't do, we can't do. Right, but what I don't know is if there's any sort of introductory remarks when that starts to say the district found that there was a likelihood that the board was going to prove that, and then they list, we did this, we did this, we won't do this, we won't do this. I think, I think- The risk of authorizing- I'm sorry? That's the risk of authorizing an injunctive litigation on an issue. No, but I think with all due respect, I think that that's a different notice if those introductory remarks, and I don't know if that's said. Then, I think I'm- But if it is, I'm not aware of any case, a board case or of ours, correct me if I'm wrong- I'm not aware. Or anyone's ever been told to do it twice, do round A, preliminary one, and do round two, final one. Well, I don't know. That I'm not sure about, because we do have plenty of cases where there have been NJs that have issued, and that have been notice readings. I know two of them that I've been involved with, for instance, and then there was enforcement, and there was a notice. There was the HTH, for instance, in this court. I know HTH- Second notice reading? What's that? It wasn't a second one. I don't know. I don't know. The district court ordered it. That was enforced. Whether there was compliance, I don't remember, but then the court ordered the notice reading on that. But again, you may be right. It may not have actually happened in the district court, but I know there was a 10J in that case, and there was a notice reading ordered, and it was ordered in court. Again, factually, I'm not sure, but it certainly wasn't discussed by the court, so it may be just sort of slipped through everybody's minds there. So I don't think, if that's what happened, I don't think this court was saying, this is fine. Are these district court injunctions a somewhat new phenomenon, or has this been very common practice for a very long time? The statutory provisions has existed. The 10J provision authorizing the general counsel to do this, or the board general counsel on its behalf, has existed forever. But whether any particular general counsel, so it's up to the, the general counsel is the one who asks the board, can we go ahead and do this? So I think the frequency with which you see the board general counsel seeking these injunctions fluctuates depending on the priorities of particular general counsels. So I don't know if that answers your question. It's not a new phenomenon. We have an office dedicated to 10J injunctions. That's been around for a long time. That's not new. Like I said, the frequency fluctuates depending on priorities of particular general counsels. Just to make crystal clear, your position is that their claim about notice reading is not moot, and you are asking us to enforce it. I believe at this stage, that's without having, seen everything and understanding exactly what was read previously, I think I'd have to say that. Obviously subject to correction by this court, but no, that's, yes, that would be my position at this point. And then I just want to say two quick things. I see my time is over, but I'd like to say one thing or two. So just very, very quickly, on the rebuttal case, I think it's very important to focus on would versus could. So I think opposing counsel said several times that they came forward and they showed we followed the discipline policy. And obviously the board disagrees that they rigidly adhere to that. So that we could have fired her. That is not the question. The employer had to show by preponderance of the evidence that they would have done so. And I think there was also a statement that there was no information at all or nothing in the record to show that there was any drifting from the policy. And that's just not accurate. We put this in the brief, but I'm just gonna say it one more time here. I think it's around joint appendix 109. There's the series of emails that starts right after she commits that August 22nd cash handling incident that prompted everything, that triggered her separation, where there is confusion among everybody involved with discipline. There's confusion from the HR director who is on site, or maybe not on site, but who oversees the Gilbert facility. That very person says, Anissa just had another this cash handling. What do we do? There's a discussion then among supervisors and other district managers on how to treat that, where they say, it's cash handling, it's different, not sure. I think you could do this. So there's that evidence. There's Cook's statement that she says to Keene when they present her with the cash handling violation. And she says, I think it's for, it's not a big deal. Again, not for truth of the matter, but certainly there's confusion on what exactly how cash handling incidents are true. This court said somewhat recently in Circus Circus, right line second prong requires the board to examine first, whether the employer reasonably believed the employee committed the acts. So supporting discipline, I take it that is not so much in dispute here. And second, whether the decision was consistent with the company's policies and practice. Do you dispute that the decision here was consistent with the company's policies and practice? I would say that the decision was not consistent with its progressive discipline policy, unless you just say, we invoke that discretionary clause that's at the beginning of our policy all the time. So I think it's consistent with them exercising flexibility and not actually following the four step. So I'm not sure that answers the question. I don't think if you, if we assume for the purposes of that question, that the policy or that the practice that you're asking me about, is they strictly adhere to a four step process before the fourth step being discharged? Absolutely not. I don't think it was consistent with that. If the question is- Is the practice, sorry, go ahead. No, no, but if the question is, did they exercise flexibility with Hubbard consistent with the reserved discretion within the policy? I'd have to say yes. I don't think that they didn't, the board doesn't find that they went through as rigidly the steps, but the policy reserves to the employer, the discretion to do that. So I'm not exactly sure how to answer that question. So they technically follow the policy, but not in the way that they claim they follow the policy. Are we supposed to apply this test as Circus Circus laid it out? Is that the right inquiry? I'm sorry, I missed the last part about you. Is that the right inquiry? Whether the decision was consistent with the company's policies and practices. So I know that the employer sort of raises Circus Circus maybe in like a footnote or, and we say, you know, they didn't raise that to the board. And what I'm a little confused on is in Circus Circus, I don't know what it gets, because that's a good faith defense case as far as I understand it, which isn't, that wasn't the employer's rebuttal case here as far as I understood it. So I don't, I think if you applied Circus Circus, it doesn't change the results. Cause I don't think that we have, I don't think they have shown that any damage to the board's decision on the basis of that second part of Circus Circus. I don't think that they were claiming a good faith defense. I don't think the board treated any of their rebuttal case as a good faith defense. Traditionally a good faith defense is, I thought you actually did something wrong. So I terminated you, I terminated you for X, and I really had a good faith belief that you did X. It's not what happened here. So I'm a little confused actually on why Circus Circus is sort of in the mix. And we were happy enough to just say, hey, you didn't raise it. So the board didn't address it. But then I understand they came back and said, well, we did raise it. I'm not sure I read Circus Circus to require us. You distinguished between could have and would have. And I'm wondering if Circus Circus requires the company here to show that it would have. I guess then if that's the distinction, then that would be significant then. I guess I didn't understand that. So then if Circus Circus, if you confine that then to what is a good faith defense, that is very different than what it did here. Because traditionally under right line, what they've invoked the traditional defense, which is what we did was okay. We told you why we did it. It's not the way to get, she actually did it. And it was a legitimate reason for terminating her employment. And then the board imposes the obligation once the board, once the general counsel's minutes. When the board is going to impose an obligation on the employer to prove by preponderance of the evidence, fine, you've offered your legitimate reason. Now you also, you have to show that you would have done it. So that's a different defense than under Circus Circus, which is the good faith basis, which I don't understand. I don't read any of their arguments either to the administrative law judge, to the board or to hear that there was any good faith. Nobody's disputing that she had a cash, that she was $20 short on her drawer on August 22nd. Nobody disputes that. They're not wrong. They're not wrong. So I don't think Circus Circus comes into play then as a good faith defense, because it's not that defense, if that makes sense. And then the last thing I will say, if I promise I'm going to keep it under 30 seconds, it's just on the union access issue. I know member Ring says this as well in his dissent that there's no need for the union to be able to come in and speak to the employees, because if she's back at work, everything is all set, everything's fixed. But I think that we don't have any idea if Aneesa Keen, I know she's back interim, we don't know how long she's going to stay. There's evidence in the district court record that she actually was looking to go back to graduate school. And, but I think more importantly, that puts a huge onus on the person who stood up to organize for the union, suffered separation from the termination to then just assume that that same person is going to go back and do the same thing again and start organizing and giving out all the information and the union, put her neck on the line again. I think that that is not a reasonable view of Keen's responsibility. I don't think the remedy should be changed just because we think that Keen can take care of it, so. No further questions? May I ask for full enforcement? Very much. Thank you. We'll give you two minutes. I obviously want to start right where it ended. The problem with this case is, I mean, you can look at the board's order at page five. It orders it because the employer deprived its employees of access to accurate information about a union. I don't understand how the notice posting doesn't take care of that. We're talking about 381 statements, a threat, a promise, and an impression of surveillance. The notice- They're right on the discharge. So if you lose on that, then discharging the sole union organizer right at a critical time, and not just discharging her, trashing her reputation and name in front of all the employees, and then sending her out, that just letting her come back in and posting a poster isn't gonna fix the message from an employer, and that wasn't even the only unfair labor practice they engaged in, or else you're gonna lose your tips, you're gonna lose your benefits. We'll just tag up a poster here and everything's hunky-dory. That's just not realistic. This isn't, I take it, that big a workplace. And so it's really, as I read the board decision, we gotta decide this, we gotta be fair to what the board decided, and that was that this is, you sort of struck a dagger at union organizing here. Maybe a couple of times you drove it into the heart, and so it's not enough just to tag up a poster. So again, a single discharge does not sustain a union access remedy, and there's no case cited by the board where that's the case, but even beyond that, I think that the biggest problem that I have is, again, A, the board did not base it upon a misdemeanor termination of employment. We're discharging her, and we'll do the same to anyone else who tries to organize here. So a poster would be enough? One discharge? One discharge, it would not be enough. A poster would not, so you could do a union, wait, let's just go down here. I'll give you a couple of minutes to finish what you wanna say. If you can have a union access remedy with one discharge, at least in the scenario I have posited. I don't believe that you can. I'm sorry, I misunderstood you. I thought you said that if they said, we're firing her on the way out, they said, and this same thing will happen to anyone else who tries to organize in this shop. Well, I guess in that case, I think that it's possible. But you could have her one. I think that it's- So it isn't a numbers game here. If it's surrounded by other threats, and that is a hallmark violation of itself, right? The other 8A1 violations here are hallmark violations that are severe, pervasive, and outrageous. They're violations of the act, yes, but they're not severe, pervasive, and outrageous. If you compare the union access cases that the board cited- So maybe the behavior was on the mindset of employees. We could debate all day how this was interpreted by the employees, but they sort of made the decision that on this record, a clear message was sent. Just as clear as if they said, we'll do the same thing to anybody else. If that's what they've found. Right, but that is not what the board found here. The board simply found that there were these three, this is a 53-day course of time. The 8A1, the three statements that were alleged to be unlawful, all occurred in one 30-minute meeting. Yeah, that's a pretty terrible meeting, where she's disparaging Ms. Keene in front of her employees. She's out to hurt you for her own self-interest. I encourage you to review the cases that the board cites in support of the union access remedy, because those cases don't just involve one 30-minute meeting and determination a month plus later. They involve a consistent, truly severe, pervasive, where every day or every week there is a new violation. There is something new where the employer is expressing that it doesn't want the union, but that doesn't exist here. Well, if the board finds that this, look, we need to impose a remedy that cures the violation. They said, this is what's needed. This is a small shop. And this was their first effort at union organizing. And so I don't, you know, and we need it. We can't cure the problem. If that's what they find, we're gonna say, sorry, you have to wait until the problem is 10 times worse. I get that you need that to cure it, but you just don't get to cure it. But that's not what they say. They say that the access- You can't cure it because of the consequences, what the messaging is that comes when you discharge on a union employee, and not just discharge, you drug a reputation through the mud. No, respectfully, Your Honor, on page five, the board offers its sole justification, which is that the employer deprived its opportunities of access to accurate information about a union. We read it in the context of all the findings that they've made. We don't just pick one sentence out at a time and look at it. It's not how we read agency decisions. Well, fair, but under this court's precedent, the board has to explain why the extraordinary remedies are necessary. And the sole explanation that it gives is that, that there was misinformation and it had to be corrected. Well, the posting, and frankly, the notice reading from the district court resolves anything that was said previously. And so this remedy that they're seeking, the reason that they're seeking it, is based upon some future unknown conduct that maybe the company will, again, violate the law, but that can't be the basis for a union access remedy. Question, I'll ask you the same thing. So do you think your notice reading claim is moot? You've satisfied it, you can't be required to do it again, or do you agree that the way for us to deal with that would be to, assuming we agree with the board on its other claims, that to enforce the board's order and let you fight it out on remand or in the compliance stage? I think that it's mooted, and if it's not mooted in fact, it's mooted in practice in the sense that the message has already been sent to the employees. And so what is the point of sending it again? And even in this case, if the board affirms the order, even in part, there will be a notice posting that is again issued in this case. And so there will be a remedy. It is not as though the court makes its decision and nothing happens. Mr. Gildger, a moment ago, you said that all the prior access cases involved a series of significant violations. Did you also say earlier on that they were all 8A3 cases? There are, I believe, one or two that don't involve 8A3s, but they involve hallmark violations, threats of plant closure, threats of job loss, things of that nature. They're serious. And then there's this other culture where the board finds that the employer has some serious goal to constantly go at the employees and destroy the union. And I submit that- When you referred to Gissel, though saying this is nowhere near a Gissel case, did that, I took that to mean that all the others were. I believe that the other access cases that are cited, while Stern Produce was a Gissel case, United Dairy Farmers Corporation, oddly enough, was a case that was so severe that the board contemplated issuing a non-majority bargaining order. And that's the level of conduct- They were 8A5s, they were 8A5s. There were 8A3s, I believe, in both of the, in the United Dairy case. I don't recall if there was in the Stern case. I know that there were 8A5s or 8A3s in the United Dairy. Thank you. Thank you very much. The case is submitted.
judges: Millett, Walker, Ginsburg